Ieseey, J.
The plaintiffs, Louise Irma Thibodaux, Laura Thibodaux, wife of Eugene N. Dutreil, and the three minor children of Julie Thibodaux, represented by their father and natural tutor, Hypolite Viala, claim to be creditors of the succession of their father, H. M. Thibodaux, in the sum of fifteen thousand nine hundred and sixty-five dollars and twentyeents, their inheritance from their mother, Louise Buhé, who died May 21st, 1847, while her said children were minors and which amount having been, as they aver, received for them by their father and natural and confirmed tutor, they now claim from his succession, with legal interest from their respective majorities, with a legal mortgage on the property of their father’s estate, to the extent of the principal and interest of the sum demanded. In order, however, to sustain their present demand, the plaintiffs must first succeed in setting aside and annulling certain acts in the shape of acquittances and releases of mortgage, given by themselves to their father and tutor in his lifetime, and this is mainly the object of this suit. The petition accordingly sets forth as follows: The valuation of the property depending in the community of the father and mother, as shown by the inventory made soon after her death, and the adjudication of the minors’ share of it to the father; also, the sums brought in marriage by the spouses, respectively.
That on the 2d October, 1850, the father had presented to the‘Court an account liquidating the community, which was ajoparently much indebted, but showing, nevertheless, a balance accruing to the minors of $10,793.
That this account was homologated on the 13th November, 1850, after the rejection of a single item, by which the aforesaid balance was increased to $10,965 50,
*150 That on the 31st of March, 1857, by notarial act, the three daughters, Irma and Julie, as well as Laura, already wife of Dutreil, and by him authorized and assisted in the act, declared themselves of lawful age; acknowledged that an account of their maternal inheritance had been rendered by their father and homologated more than ten days previously in the suit No. 699 of the docket of the District Court of Terrebonne, and that they have examined the said account and vouchers, and found the same correct; that they approved and satisfied the homologation of it; that according to it the sum coming to them was §10,793 or $3,597 60 to each.
They further say that, whereas they have for the security of it a special mortgage on certain property of their father, which they describe, they desire to release that mortgage; and their father, also' appearing in the act, declares that in consideration of that release, ho gives his children another mortgage on other property described in the act, to secure the aforesaid balance still due them. Before doing this act, the parties also declare that by the judgment of homologation of the account above mentioned, the sum due the minors had been erroneously fixed at §10,965 50, and authorize its reduction to the true amount of §10,793.
That by another act of the 10th April, 1857, the same parties again appeared, and reciting once again that pursuant to the account rendered by their father and tutor in suit No. 699 of the District Court of Terrebonne, the balance in their favor was §10,793, but that it had been by the decree of homologation of said account increased to §10,965 50; they covenant and agree that the former is the true amount, and they then declare that they have each that day received from their father the sum of §3,597.60, accruing to each, and in consideration of that payment they grant full acquittance of all dues and release of mortgage.
The petition then avers the amount above mentioned to be erroneous, and the judgment of homologation to be only provisional, and not conclusive upon the minors; and, particularly, that the account .was not properly supported by vouchers; also, that the acts of 31st March and 10th April are null, for this:
1. Non-compliance with formalities prescribed by C. C. Art. 355, by reason whereof the minors had no knowledge of the true state of their accounts with their tutor.
2. That no money was ever paid as stated in the said acts.
3. That JvMe was still a minor when these acts were executed; and that Mrs. Dutreil, though emancipated by marriage, was still under age at the time, and could only bind herself to the extent of one year’s income.
It is by a proposed rejection of certain items of the tutor’s account, rendered in the suit No. 699, and homologated by the decree of 2d November, 1850, that the petition assumes to raise the balance due to §15,965 25 instead of §10,793, and it concludes by asking that the amount be thus established anew; the acts of 31st March and 10th April, 1857, be annulled, and the plaintiffs recognized as creditors for that sum, with interest, and the tacit legal mortgage on all the property of the estate,
• The administrator, by his answer, resists all the plaintiffs’ pretensions, and insists on the correctness and validity of the amounts and costs attacked, it opposes to the claims of the plaintiffs the prescription of four *151 and five years, and, finally, sets up in reduction of any amount they might recover, certain sums of money advanced them by himself out of the estate now' largely insolvent, at a time when it was not suspected of being so.
The intervenors, Perry, in his own right and as syndic of the creditors of Lobit k Charpentier, and Lobit k Charpentier show' themselves to be creditors of the estate of H. M. Thibodattx, for large amounts to secure which the deceased had given mortgages on the property left at his death and composing his estate.
They allege the insolvency of the estate, the appraised value of the property in its present condition being less than the amount claimed by the present plaintiffs. On these grounds the intervenors rest their right to come in and resist the claim of the plaintiffs, which they do by averring the binding force of the account and of the acts of the 31st March and 10th April, 1857, which the plaintiffs seek to annul and avoid.
They further plead, as does the representative of the estate, the' prescription of four and five years as a complete bar to any such claims as those set up by the plaintiffs. After a trial contradictorily in the District Court, there was a judgment against the plaintiffs, rejecting their claim in toto. The judge d quo did not pass upon the question of prescription, but went into an examination of the merits, and saw in the evidence no ground to impugn the fairness of the settlement made by the plaintiffs with their father.
He was satisfied with the proofs of the satisfaction and payment of the plaintiffs’claims—proofs furnished by their own acts, viz: those of 31st March and 10th April, 1857, and an act of October, 1858.
The plea of prescription is earnestly relied upon in this Court, and as it is the first question in order, one which, if maintainable, will tend to put an end to the plaintiffs’ action, it will be first examined.
The action of the minor against his tutor, respecting the acts of the tutorship is prescribed by four years, to begin from the day of his majority. Civil Code, Art. 356. Gilbert v. Merriam, 2 An. 162; Bonnafanne v. Wells, 10 An. 658; Odile Gourdam v. Davenport, 10 Rob. 174.
During that delay, the minor arrived at the age of majority may sue his tutor for an account of tutorship (Cominargere v. Golly, 6 La. 161); or he may sue to annul settlements made with his tutor not in strict accordance with the requisitions of law. C. C. 355. Tutorship of Francis Haclcet and another, minors, 4 Rob. 297.
This prescription runs whether the tutor has rendered any account or not, and his entire omission to do so does not prevent the prescription from running. Succession of MeGill, 6 An. 345. And judgment creditors can avail themselves of it. Civil Code, 3429. Pothier on Obligations-, 700. Troplong on Prescription, 100, et seq. 6 An. 345.
Are the facts of this case such as to bring the plaintiffs within the scope of these authorities, and do they support the plea of the prescription of four years ?
The family record of births and deaths, which the plaintiffs have themselves offered in evidence, explained by a wdtness, gives the ages respectively of Louise Irma, of Laura, and of Julie Brigelte.
Louise Irma was born on the 11th February, 1836. She, consequently, *152 attained her majority on the 11th February, 1857, and she was of full age when the acts of 31st March and 10th April were passed.
Prescription was therefore acquired against her on the 11th February, 1861.
Laura, the wife of Dutreil, was emancipated by marriage when the acts attacked were executed, but prescription only commenced runningagainst her from the day of her majority, or from the day on which she was dispensed by law with the time necessary to attain her majority, and this last event occurred on the 15th February, 1858. The time of prescription as to her would, therefore, if not suspended, expire on the 15th February, 1862. Her action was instituted on the 16th January, 1866.
One of the grounds assigned for a suspension of prescription against Mrs. Dutreil is, that on the 11th April, 1857, the day after the settlement between the tutors and the minors was made, the tutor executed his four promissory notes in favor of E. N. Dutreil, the husband of Laura, and that these notes were given in part representation of the amount due by the tutor to Mr. Dutreil’s wife ; that if Mrs. Dutreil had instituted this suit, the tutor would doubtless have claimed the cancellation of these notes, and thus the action of the wife would have been prejudicial to the husband ; and such being the case, prescription did not run against her. ” See Civil Code, 3491.
There is no sufficient evidence in the record to connect the notes alluded to with that settlement. The proof furnished with that view is all of a negative and unsatisfactory character, and does not warrant the application of the Article of the Code relied upon.
The other grounds set up for the suspension of prescription will be presently adverted to.
■ ■ Julie or Brigette, wife of Viala and the mother of his minor children, whom he represents in this suit, was bom on the 25th May, 1837. She attained her majority on the 25th May, 1858, and she died on the 16th April, 1863. Prescription, unless suspended, w'as acquired against her on the 25th May, 1862. ' •’
No legal reason is shown in the record why Laura and Julie could not have prosecuted their present action within and up to the periods when prescription against each of them was completed.
' It is, however, contended that, in any contingency, all prescription wag suspended, and did not run against the plaintiffs, in consequence of the' death of H. M. Thibodaux, their tutor, on the 5th March, 1861, less than four years after the settlement, and that they, having accepted his succession, with benefit of inventory, became his beneficiary heirs, against whom prescription does not run. See Art. 3492, ?¿ 1, Civil Code.
■ The succession of H. M. Thibodaux was so accepted by his children, the plaintiffs, in March, 1864; and it becomes necessary to interpret, for the first time, the paragraph of the Article of the Code referred to above, which provides that “prescription does not run against a beneficiary heir with respect to the debt duo him by the estate.”
Reading this Article in connection with Article 3493 C. C., which corresponds textually with Articles 2258 and 2259 of the Code Napoleon, and aided by the lights furnished by the Courts in France and the commentators of the latter Code, we are not embarrassed in reaching the conclu *153 sion that there is only a suspension of prescription, under Article 3429, in favor of beneficiary heirs, from the time of the express acceptance of a succession under the benefit of an inventory.
In the case of Brulon v. Follett, Journal du Palais for 1833, page 688, a decision was rendered, on a state of facts and of law, precisely analogous to that presented here, to the. effect that ‘‘ prescription in regard to claims which the heir may have against the succession, runs against himself so long as he has not accepted the succession with the benefit of an inventory, and his acceptance as beneficiary heir cannot destroy prescription thus acquired against him during the interval of the opening of the succession.” See also Moussard v. Velette et Bonnefond, Journal du Palais 1849, vol. 2, 659. Troplong on Prescription, commenting on Articles 2258 and 2259 O. N., and Duranton on the same Articles, Nos. 316 and 322.
The plaintiffs are not included in any of the exceptions established by law to suspend the course of prescription against them.
Considering the plaintiffs’ action prescribed, we have not examined any of the other questions presented by the pleadings.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court bo and the same is hereby affirmed, at the costs of the plaintiffs and appellants.